Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONALD BROWN, <br><br>                 Plaintiff, <br><br>       vs. <br><br> ENGAGESMART, INC., PAUL G. STAMAS, ROBERT P. BENNETT, DEBORAH A. DUNNAM, MATTHEW G. HAMILTON, DAVID MANGUM, PRESTON MCKENZIE, RAPH OSNOSS, and DIEGO RODRIGUEZ. <br><br>                 Defendants. | Case No.: <br><br> **Complaint For:** <br><br> (1) Violation of § 14 (a) of the Securities Exchange Act of 1934 <br> (2) Violation of § 20(a) of the Securities Exchange Act of 1934 <br><br> **<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Donald Brown ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

<u>SUMMARY OF THE ACTION</u>

1.     Plaintiff brings this stockholder action against EngageSmart, Inc. ("EngageSmart" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Icefall Parent, LLC ("Parent") through merger vehicle

Icefall Merger Sub, Inc. ("Merger Sub," and collectively with "Parent," "Vista Equity") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an October 23, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Vista Equity will acquire all remaining outstanding shares of EngageSmart's common stock at a price of $23.00 per share in cash, except for approximately 35% of Company stock currently owned by minority holder General Atlantic, which will roll over its investment into the surviving entity as a result of the Proposed Transaction.

3.      Thereafter, on November 20, 2023, in support of the Proposed Transaction, the Company and Vista Equity caused to be filed with the SEC a Form PREM14A attaching the Preliminary Proxy Statement in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Notably, the Preliminary Proxy Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus, in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for EngageSmart, provided by EngageSmart management to the Board and the Board's financial advisors Evercore Group LLC ("Evercore") and Goldman Sachs & Co., LLC ("Goldman Sachs"); (c) the data and inputs underlying the financial valuation analyses, if

any, that purport to support the fairness opinion(s) created by Evercore and Goldman Sachs, if any, provided to the Company and the Board

5.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

6.      Plaintiff is a citizen of Oregon and, at all times relevant hereto, has been an EngageSmart stockholder.

7.      Defendant EngageSmart provides vertically-tailored customer engagement and integrated payments solutions. The Company is incorporated under the laws of the State of Delaware and has its principal place of business at 30 Braintree Hill Office Park, Suite 101, Braintree, MA 02184.  Shares of EngageSmart common stock are traded on the New York Stock Exchange under the symbol "ESMT".

8.      Defendant Paul G. Stamas ("Stamas") has been the Chairman of the Board of Directors of the Company at all relevant times.

9.      Defendant Robert P. Bennett ("Bennett") has been a director of the Company at all relevant times. Bennett is also the Founder and Chief Executive Officer of the Company.

10.      Defendant Deborah Dunnam ("Dunnam") has been a director of the Company at all relevant times.

11.      Defendant Matthew G. Hamilton ("Hamilton") has been a director of the Company at all relevant times.

12.      Defendant David Mangum ("Mangum") has been a director of the Company at all relevant times.

13.     Defendant Preston McKenzie ("McKenzie") has been a director of the Company at all relevant times.

14.     Defendant Raph Osnoss ("Osnoss") has been a director of the Company at all relevant times.

15.     Defendant Diego Rodriguez ("Rodriguez") has been a director of the Company at all relevant times.

16.     Defendants identified in ¶¶ 8 - 15 are collectively referred to as the "Individual Defendants."

17.     Non-Party Vista Equity Partners is a global investment firm.

18.     Non-Parties Icefall Parent, LLC and Merger Sub are wholly owned subsidiaries of Vista Equity created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

22. EngageSmart is a leading provider of vertically tailored customer engagement software and integrated payments solutions. EngageSmart strives to simplify customer and client engagement to allow its customers to focus resources on initiatives that improve their businesses and better serve their communities. The Company offers single instance, multi-tenant, true Software-as-a-Service ("SaaS") vertical solutions, including SimplePractice, InvoiceCloud and DonorDrive, that are designed to simplify our customers' engagement with their clients by driving digital adoption and self-service. As of September 30, 2023, the Company serves 116,200 customers in the SMB Solutions segment and 3,400 customers in the Enterprise Solutions segment across several core verticals: Health & Wellness, Government, Utilities, Financial Services and Giving.

23. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the August 3, 2023 press release announcing its 2023 Q2 financial results, the Company highlighted such milestones as total revenues of $94.4 million, an increase of 28% compared to the same period last year. Further, SMB revenues were $53.1 million, an increase of 30% compared to the same period last year.

24.     Speaking on these positive results, CEO Defendant Bennett commented on the Company's positive financial results as follows, "Extending our proven track record of success, we achieved another remarkable quarter and delivered record revenue of $94.4 million, net income of $4.3 million, and adjusted EBITDA of $19.4 million. Our excellent results in both SMB and Enterprise demonstrate our ability to balance sustainable top-line growth with strong profitability, and they underscore the durability of our business model. With our teammates' relentless execution and our attractive market position in defensive verticals, we are well positioned for continued success."

25.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by EngageSmart.  Clearly, based upon these positive financial results and outlook, the Company is likely to have future success.

26.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused EngageSmart to enter into the Proposed Transaction without providing requisite information to EngageSmart stockholders such as Plaintiff.

***The Flawed Sales Process***

27.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

28.     Of significant note, the Company's largest stockholder General Atlantic, who through affiliated funds owns approximately 53.7% of the Company, will be treated differently than all other stockholders of Engagesmart, including Plaintiff. Specifically, General Atlantic will be allowed to roll over their equity into the surviving entity, allowing General Atlantic to continue

to reap the benefits of their investments while all other stockholders of the Company, such as Plaintiff, are frozen out of their ownership interests. Notably, the Preliminary Proxy Statement fails to adequately provide information justifying this decision.

29.     The Preliminary Proxy Statement fails to provide adequate explanation as to why multiple financial advisors were retained by the Board during the process, at excess cost compared to engaging a single financial advisor.

30.     Moreover, despite indicating that Goldman Sachs created certain financial analyses regarding the Company and the Proposed Transaction which were presented to the Board, the Preliminary Proxy Statement fails to provide such financial analyses.

31.     Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Vista Equity, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

32.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

33.     On October 23, 2023, EngageSmart and Vista Equity issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> BOSTON--(BUSINESS   WIRE)-- EngageSmart,   Inc.   (NYSE:   ESMT) ("EngageSmart" or "the   Company"), a leading provider of vertically tailored customer engagement software and integrated payments solutions, today announced that it has entered into a definitive agreement to be acquired by an affiliate of Vista Equity Partners ("Vista"), a leading global investment firm

focused exclusively on enterprise software, data and technology-enabled businesses, in an all-cash transaction valued at approximately $4.0 billion.

Under the terms of the agreement, EngageSmart stockholders will receive $23.00 per share in cash upon completion of the proposed transaction. The purchase price represents a premium of approximately 23% to the unaffected closing price of EngageSmart's common stock on October 4, 2023, and a premium of approximately 30% over the volume weighted average price (VWAP) of EngageSmart's common stock for the 30 days ending October 4, 2023.[1] Upon completion of the transaction, affiliates of Vista will hold approximately 65% and affiliates of General Atlantic, a leading global investor, will hold approximately 35% of the outstanding equity.

A special committee of EngageSmart's Board of Directors comprised of independent directors (the "Special Committee"), advised by independent legal and financial advisors, was formed to conduct a deliberate and thoughtful process to evaluate this proposal and other potential value creation opportunities for EngageSmart.

"We have built an amazing business by putting our customers at the center of everything we do," said Bob Bennett, EngageSmart CEO. "We continue to see attractive growth and customer retention in our vertically tailored SaaS solutions—a testament to the strength of our business model and our leading products. We believe the partnership with Vista and General Atlantic will enable us to continue investing in innovation and people to drive growth. We look forward to continuing to serve our customers and support our employees who are relentless in their pursuit of customer satisfaction."

"EngageSmart is a demonstrated leader in delivering mission-critical solutions for modern businesses and simplifying customer and client engagement for over a hundred thousand organizations," said Michael Fosnaugh, Co-Head of Vista's Flagship Fund and Senior Managing Director. "We look forward to working with EngageSmart as they continue to innovate, scale and empower organizations to better serve their customers."

"We have long admired EngageSmart's vertical domain expertise in SaaS and its high-quality solutions across the SMB and Enterprise segments—proven by an established track record of growth and profitability," said Jeff Wilson, Managing Director at Vista. "We are eager to build on EngageSmart's momentum and look forward to working closely with the talented leadership team to provide even more powerful, innovative and seamless solutions for customers."

"We are grateful to Bob and the entire EngageSmart team for their ongoing collaboration and trust. Since we first partnered together in 2019, EngageSmart has established itself as an industry leader by digitizing critical business processes and payments in the industry verticals they serve," said Paul Stamas, Managing Director

and Global Head of General Atlantic's Financial Services sector. "We believe this transaction is compelling for stockholders, and we look forward to continued partnership with the EngageSmart team alongside Vista to build on the Company's success to date."

**Transaction Details**

Transaction negotiations were led by the Special Committee and following its unanimous recommendation, the EngageSmart Board of Directors unanimously approved the merger agreement with Vista and agreed to recommend that EngageSmart stockholders vote to adopt the merger agreement.

EngageSmart has entered into support agreements with affiliates of General Atlantic and Summit Partners, owners of 52% and 14% of the fully diluted stock of the Company, respectively, under which they have agreed to vote all of their shares in favor of the transaction, subject to certain terms.

The transaction is expected to close in the first quarter of 2024, subject to customary closing conditions and receipt of customary regulatory approvals, as well as the affirmative vote of the holders of a majority of the outstanding shares of the Company's common stock held by stockholders other than affiliates of General Atlantic and certain officers of the Company. Vista intends to finance the transaction with fully committed equity financing that is not subject to a financing condition. Upon completion of the transaction, EngageSmart will become a privately held company and EngageSmart common stock will no longer be listed on any public market.

The definitive agreement includes a 30-day "go-shop" period that will expire at 11:59 PM ET on November 22, 2023, which permits the Special Committee and its financial advisors to solicit and consider alternative acquisition proposals. There can be no assurance that this process will result in a superior proposal, and the company does not intend to disclose developments with respect to the "go-shop" process unless and until it determines such disclosure is appropriate or is otherwise required."

*Potential Conflicts of Interest*

34.    The breakdown of the benefits of the deal indicates that General Atlantic and Company insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board, the Company's executive officers, and General

Atlantic are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of EngageSmart.

35.     Company insiders currently own large, illiquid portions of Company stock, large amounts of company options, restricted stock units, and other equity award, some of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  The Preliminary Proxy Statement provides the following but does not account for the merger consideration each of these amounts will be exchanged for upon the consummation of the Proposed Transaction:

| Name | Shares Held Directly[1] | | EngageSmart RSU Awards[2] | | In-the-Money EngageSmart Option Awards[3] | | Total ($) |
|---|---|---|---|---|---|---|---|
| | Number of Shares (#) | Value of Shares ($) | Number of Shares (#) | Value ($) | Number of Shares Subject to Option Awards (#) | Value of Shares Subject to Option Awards ($) | |
| Paul G. Stamas | — | — | | | | | — |
| Robert P. Bennett | 2,986,577 | 68,691,271 | 271,133 | 6,236,059 | 427,911 | 7,415,698 | 82,343,028 |
| Deborah A. Dunnam | 21,191 | 487,393 | 16,089 | 370,047 | — | — | 857,440 |
| Matthew G. Hamilton | — | — | | | | | — |
| David Mangum | 8,500 | 195,500 | 9,550 | 219,650 | 225,000 | 4,495,500 | 4,910,650 |
| Preston McKenzie | — | — | | | | | — |
| Raph Osnoss | — | — | | | | | — |
| Diego Rodriguez | 3,853 | 88,619 | 24,662 | 567,226 | — | — | 655,845 |
| Cassandra Hudson | 68,777 | 1,581,871 | 120,447 | 2,770,281 | 635,000 | 12,407,900 | 16,760,052 |
| Scott Semel | 34,881 | 802,263 | 112,854 | 2,595,642 | — | — | 3,397,905 |
| Jonathan Seltzer | 1,671 | 38,433 | 37,095 | 853,185 | 359,808 | 6,791,464 | 7,683,082 |
| Kevin O'Brien | 26,713 | 614,399 | 122,581 | 2,819,363 | — | — | 3,433,762 |
| Patrick Donovan | 4,130 | 94,990 | 43,557 | 1,001,811 | 60,000 | 1,039,800 | 2,136,601 |

37.     Furthermore, certain employment agreements with certain EngageSmart executives entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them, millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| Robert Bennett | 1,231,233 | 9,485,434 | 48,000 | 10,764,667 |
| Kevin O'Brien | 693,808 | 2,819,363 | 30,000 | 3,543,171 |
| Scott Semel | 435,798 | 2,595,642 | 22,500 | 3,053,940 |
| Cassandra Hudson | 909,623 | 6,434,109 | 30,000 | 7,373,732 |

38.     Moreover, as stated above General Atlantic's current interest in the Company will be rolled over into a 35% ownership in the surviving entity upon the consummation of the Proposed Transaction, treatment not shared amongst Plaintiff and other public stockholders of the Company.

| ($ in thousands) | Beneficial Ownership of EngageSmart Prior to the Merger[1] | | | Beneficial Ownership of EngageSmart After the Merger[2] | | |
|---|---|---|---|---|---|---|
| | % Ownership | Net Book Value at September 30, 2023[3] | Net Income for the Nine Months Ended September 30, 2023[4] | % Ownership | Net Book Value at September 30, 2023[3] | Net Income for the Nine Months Ended September 30, 2023[4] |
| Parent | — | $    — | $    — | 100% | $  842,233 | $   19,992 |
| Vista | — | — | — | 65.0% | 547,451 | 12,995 |
| General Atlantic | 53.8% | 453,121 | 10,756 | 35.0% | 294,782 | 6,997 |

39.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation. Communications regarding post-transaction employment, during the negotiation of the underlying transaction, must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management, the Board, and General Atlantic as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40.     Thus, while the Proposed Transaction is not in the best interests of EngageSmart, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers, directors, and General Atlantic.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

41.     On November 20, 2023, the EngageSmart Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up*
*to the Proposed Transaction*

42.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

a.  Adequate information and explanation regarding General Atlantic's disparate treatment in merger consideration as compared to all other Company Stockholders;

b.  Adequate explanation as to why multiple financial advisors were retained by the Board during the process, at excess cost compared to engaging a single financial advisor;

c.  The data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion(s) created by Evercore provided to the Company and the Board;

d.  The financial analyses regarding the Company and the Proposed Transaction which were created by Goldman Sachs and presented to the Board, if any;

e.  Whether the confidentiality agreements entered into by the Company with Vista Equity differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

f.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company

and potentially interested third parties throughout the sales process, including Vista Equity, would fall away;

g.     Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning EngageSmart Financial Projections*

41.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for EngageSmart provided by EngageSmart management to the Board and Evercore, and relied upon by Evercore in its analyses.

42.     Notably, the Preliminary Proxy Statement further reveals that, as part of its analyses, Evercore reviewed "reviewed certain internal projected financial data relating to EngageSmart prepared and furnished to Evercore by the management of EngageSmart, as approved for Evercore's use by the Special Committee (the "Company Projections")".

43.     The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that EngageSmart management provided to the Board, the Special Committee, and Evercore.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

44.     With regard to *Initial Management Projections*, *Extrapolations, May 2022 Projected Financial Information, October 2022 Projected Financial Information, and May 2023*

*Projected Financial Information*, the Preliminary Proxy Statement fails to disclose material line items, including the following:

  a.   Total Operating Income, including the underlying inputs, metrics, and assumptions used to determine the same, including specifically: cost of goods sold, sales and marketing expenses, research and development expenses, and general and administrative expenses; and

  b.   Adjusted EBITDA, including the underlying inputs, metrics, and assumptions used to determine the same, including specifically: earnings before interest, taxes, depreciation and amortization.

45.   With regard to the *September and October Unlevered Free Cash Flow,* the Preliminary Proxy Statement fails to disclose material line items, including the following:

  a.   Adjusted EBITDA, including the underlying inputs, metrics, and assumptions used to determine the same, including specifically: earnings before interest, taxes, depreciation and amortization.

46.   The Preliminary Proxy Statement fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

47.   Specifically, the Preliminary Proxy Statement's failure to disclose substantive material projection data prevents Plaintiff from being fully informed as to the nature of the Proposed Transaction and preventing him from making a fully informed decision on whether to vote in favor of the same.

48.   This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness.  Without

this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49.    Without complete and accurate projection data for EngageSmart being presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the value of the merger consideration, the accuracy of Evercore's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

### *Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Evercore*

43.    In the Preliminary Proxy Statement, Evercore describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

44.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose:

   a.  The specific inputs and assumptions used to determine the perpetuity growth rates of 5.0% to 7.0%;

   b.  The range of terminal values for the Company calculated;

   c.  The specific inputs and assumptions used to determine the EBITDA multiples of 9.0x to 13.0x;

   d.  The specific inputs and assumptions used to determine the utilized Company

discount rate range of 12.5% to 13.5%;

e. The Company's weighted average cost of capital, and the specific inputs and assumptions used to determine the same;

f. The amount of the Company's cash and cash equivalents as of September 30, 2023, and October 20, 2023 utilized; and

45.     With respect to the *Selected Publicly Traded Companies Analysis*, the Preliminary Proxy Statement fails to disclose:

a. The specific metrics for each corresponding publicly traded company serving enterprise clients ("Enterprise");

b. The specific metrics for each corresponding publicly traded company serving small and midsize business client ("SMB");

c. The specific inputs, assumptions, and metrics used to apply TEV/2024E EBITDA multiple reference range of 25.0x to 33.0x to the Company's calendar year 2024 adjusted EBITDA;

d. The amount of the Company's estimated net cash and cash equivalents as of September 30, 2023, utilized; and

e. The number of fully diluted outstanding shares of the Company's common stock as of October 20, 2023, utilized.

46.     With respect to the *Selected Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose:

a. The specific date on which each precedent merger in the Enterprise pool was consummated;

    b.  The specific date on which each precedent merger in the SMB pool was consummated;

    c.  The aggregate value of each precedent merger analyzed in the Enterprise pool;

    d.  The aggregate value of each precedent merger analyzed in the SMB pool;

    e.  The specific inputs, assumptions, and metrics used to determine the Company's utilized TEV/NTM EBITDA multiples of 25.0x to 40.0x;

    f.  The amount of the Company's net cash and cash equivalents as of September, 2023, utilized; and

    g.  The number of fully diluted outstanding shares of the Company's common stock as of October 20, 2023.

47.    With respect to the *Present Value of Future Share Price Analyses*, the Preliminary Proxy Statement fails to disclose:

    a.  The specific inputs, assumptions, and metrics used to determine the Company's utilized NTM adjusted EBITDA multiple ranges of 30.0x to 26.0x, 30.0x to 24.0x, and 30x to 22.0x for the years of 2023 through 2026; and

    b.  The specific metrics used to determine the discount rate of 14.0%.

48.    With respect to the *Sum-of-the-Parts Selected Publicly Traded Companies Analysis*, the Preliminary Proxy Statement fails to disclose:

    a.  The specific inputs, assumptions, and metrics used to determine the multiple reference range of 30.0x to 35.0x attributable to the Company's Enterprise Segment;

    b.  The specific inputs, assumptions, and metrics used to determine the multiple reference range of 28.0x to 36.0x attributable to the Company's SMB Segment;

  c. The amount of the Company's net cash and cash equivalents as of September, 2023, utilized; and

  d. The number of fully diluted outstanding shares of the Company's common stock as of October 20, 2023.

49. With respect to the *Sum-of-the-Parts Selected Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose:

  a. The specific inputs, assumptions, and metrics used to determine the multiple reference range of 4.0x to 5.0x attributable to the Company's Enterprise Segment;

  b. The specific inputs, assumptions, and metrics used to determine the multiple reference range of 30.0x to 40.0x attributable to the Company's SMB Segment;

  c. The amount of the Company's net cash and cash equivalents as of September, 2023, utilized; and

  d. The number of fully diluted outstanding shares of the Company's common stock as of October 20, 2023

50. With respect to the *Leveraged Buyout Analysis*, the Preliminary Proxy Statement fails to disclose:

  a. The specific inputs, assumptions, and metrics used to determine the internal rate of return (IRR) ranging from 17.5% to 22.5%;

  b. The specific inputs, assumptions, and metrics used to determine the exit multiples of 22.0x to 26.0x; and

  c. The specific inputs, assumptions, and metrics used to determine the gross leverage being equal to 6.5x.

51.     With respect to the *Leveraged Buyout Analysis*, the Preliminary Proxy Statement fails to disclose:

> a.   The specific research analysts' estimates used in determining the 25th and 75th percentile share price targets of $21.00 and $24.50 for the Company's Common Stock for October 4, 2023.

52.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

53.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public EngageSmart stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

50.     Plaintiff repeats all previous allegations as if set forth in full herein.

51.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

52.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities

exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

53.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

54.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

55.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

56.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

57.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

58.     Plaintiff repeats all previous allegations as if set forth in full herein.

59.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

60.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

61.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of EngageSmart's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information

available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

62.     The Individual Defendants acted as controlling persons of EngageSmart within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause EngageSmart to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled EngageSmart and all of its employees.  As alleged above, EngageSmart is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: December 20, 2023                    **BRODSKY & SMITH**

By:  *Evan J. Smith*
_____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*